UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DAVID FINKEL,

Plaintiff,

– *against* –

SYSTEMS APPLICATION INFORMATION NETWORK, INC. d/b/a COMPUTER RESOURCES OF AMERICA,

Defendant.

**OPINION & ORDER**

26-cv-02605 (ER)

RAMOS, D.J.:

David Finkel brings this employment discrimination action against Systems Application Information Network, Inc. d/b/a Computer Resources of America ("CRA") alleging that it discriminated against him on the basis of his religion in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), New York State Human Rights Law ("NYSHRL"), and New York City Human Rights Law ("NYCHRL"). Doc. 14 ¶ 1 ("Am. Compl."). Specifically, Finkel alleges that CRA fired him because of his religion. *Id.* ¶ 21.

Pending before the Court is CRA's motion to dismiss the Amended Complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Doc. 17. For the reasons set forth below, the motion is GRANTED.

## I. BACKGROUND

### A. The Court Will Consider the Termination Email

As a preliminary matter, CRA asks the Court to consider a termination email sent by CRA to Finkel submitted in support of their motion to dismiss ("Termination Email"). Doc. 17-1 at 11–12. In adjudicating a motion to dismiss, a court may consider only the complaint, exhibits to the complaint, any statements or documents incorporated in it by reference, and documents integral to it. *ASARCO LLC v. Goodwin*, 756 F.3d 191, 198 (2d

Cir. 2014) (quoting *In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013)). "To be incorporated by reference, the complaint must make 'a clear, definite[,] and substantial reference to the documents.'" *DeLuca v. AccessIT Group, Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (quoting *Helprin v. Harcourt, Inc.*, 277 F. Supp. 2d 327, 330–31 (S.D.N.Y. 2003). And "[t]o be integral to a complaint, the plaintiff must have (1) actual notice of the extraneous information and (2) relied upon the documents in framing the complaint." *Id.* (alteration in original) (citation omitted). Further, "a plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (emphasis in original) (citation omitted). Finally, "even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006) (citations omitted).

When discussing his July 30, 2025 termination, Finkel partially quotes the Termination Email and relies on its content to draw an inference of discrimination. Am. Compl. ¶ 20. Finkel uses the content of the email to argue that his termination was pretextual because, contrary to the reason provided in the Termination Email, he had no performance issues. *Id.* Accordingly, the Court finds the Termination Email explicitly incorporated by reference in and integral to the Amended Complaint. *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 112 (2d Cir. 2010) (holding that emails referred to in the complaint were incorporated by reference); *See e.g. Lopez-Serrano v. Rockmore*, 132 F. Supp. 3d 390, 400 (E.D.N.Y. 2015) (text messages were both incorporated by reference in and integral to the complaint because they "form the basis of" and "underpin" her allegations).

**B. Factual Background**

The following facts are drawn from the Amended Complaint and the Termination Email and are presumed to be true for the purposes of this motion.

Finkel is a Jewish man who observes the Sabbath and Jewish holidays. Am. Compl. ¶¶14–15. He resides in West Hempstead, New York. *Id.* ¶ 8. He was hired as a Sales Development Representative at CRA in May 2025 and was terminated three months later, on July 30, 2025. *Id.* ¶¶ 11, 19. CRA provides Information Technology ("IT") services to companies that do not maintain internal IT departments. *Id.* ¶ 10. Finkel's responsibilities as a Sales Development Representative included generating sales opportunities and cold calling prospective clients. *Id.* ¶ 11. Sales Manager Damian Allen ("Allen") was Finkel's direct supervisor. *Id.* ¶ 13. During his tenure, Finkel was the only Jewish employee at CRA. *Id.* ¶ 16. Finkel alleges that CRA did not provide him with a pricing list, data list, marketing materials, or leads. *Id.* ¶ 20.

On July 30, 2025, at the end of his three-month probationary period, Finkel was terminated during a meeting with Allen and Karla Alvarado ("Alvarado"), a CRA employee in the human resources department. *Id.* ¶ 19–20. Finkel asked why he was terminated, but neither Allen nor Alvarado provided a reason during the meeting. *Id.* ¶ 19. Allen left the room immediately after Finkel asked why he was terminated. *Id.* Finkel received an email that same day informing him that he was terminated for "unsatisfactory results during his first 90-day probationary period." *Id.* ¶ 20. Finkel alleges that this rationale was pretextual because he did not have any performance-related issues, and any deficiency in his performance was caused by CRA's failure to provide him with "a pricing list, a data list, marketing… [or] incoming leads…making it impossible for [Finkel] to generate sales." *Id.*

Finkel alleges that Allen and others made comments on at least three occasions about his religion. *Id.* ¶¶ 14, 17, 18.

*1. May 2025 Leave Requests ("May 2025 Comments")*

In May 2025, at the beginning of Finkel's employment, he informed Allen and Chico Ramnarayan ("Ramnarayan"), Owner of CRA, that he is Jewish and would need to leave work early on Fridays during the winter months to observe the Sabbath. *Id.* ¶ 14. In response to Finkel's request, Allen stated, "I had a Jewish person invite me to his house and they do a lot of drinking." *Id.* Ramnarayan then responded, "yes, I know, West Hempstead." *Id.*

Also early in his employment, Finkel told Allen and Ramnarayan that he would need to take time off work to observe the Jewish holidays in September and October 2025. *Id.* ¶ 15.

*2. Weekly Meeting ("Weekly Meeting Comments")*

After his conversation with Allen and Ramnarayan about his religious observances, Allen asked Finkel whether he "did anything Jewish this weekend" during a weekly meeting between Finkel, Allen, Ramnarayan, and Tracy Green ("Green"), an employee in the marketing department. *Id.* ¶ 17. Allen asked Finkel the same question during almost every weekly meeting. *Id.*

*3. June 2025 Mayoral Primary ("June 2025 Comments")*

In June 2025, Allen repeatedly asked Finkel how he felt about then-mayoral candidate Zohran Mamdani. *Id.* ¶ 18. Finkel alleges that he felt uncomfortable with these questions because Mamdani "has publicly and openly adopted a position adverse to Israel, which is the only Jewish state in existence, in the ongoing Israel-Hamas conflict and which stance has a direct implication on the Jewish community." *Id.*

**C. Procedural Background**

On November 12, 2025, Finkel filed a Charge of Discrimination with the EEOC alleging violations of Title VII. *Id.* ¶ 2. On March 18, 2026, the EEOC issued a Notice of Right to Sue. *Id.* ¶ 3.

Finkel filed the initial complaint in this action on March 30, 2026, which was within 90 days of receipt of his Notice of Right to Sue. Doc. 1. The Amended Complaint asserts three causes of action: religious discrimination in violation of Title VII, the NYSHRL, and the NYCHRL, respectively. Am. Compl. On June 16, 2026, CRA was granted leave to file a motion to dismiss during the pre-motion conference. On June 23, 2026, Finkel filed an Amended Complaint. CRA filed its motion to dismiss on July 21, 2026. Doc. 17-1. Finkel filed his opposition brief on August 18, 2026. Doc. 20. CRA filed their reply brief on August 25, 2026. Doc. 21.

## II. LEGAL STANDARD

### A. Rule 12(b)(6)

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). The Court is not required to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570; *see Iqbal*, 556 U.S. at 680.

The question on a motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs*

*for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)). "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits'" or "weigh[ing] the evidence that might be offered to support it." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (quoting *Global Network Communications, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)).

## III. DISCUSSION

### A. Title VII Claim

Title VII prohibits employers from discriminating against any individual with respect to their compensation, terms, conditions, or privileges of employment, because of such individual's race and color. 42 U.S.C. § 2000e-2(a)(1). To state a claim for discrimination under Title VII, a plaintiff must allege: (1) membership in a protected class; (2) qualification for the position held; (3) an adverse employment action; and (4) that the circumstances surrounding that action give rise to an inference of discrimination. *Mumin v. City of New York*, 760 F. Supp. 3d 28, 53 (S.D.N.Y 2024); *Weinstock v. Columbia University*, 224 F.3d 33, 42 (2d Cir. 2000).

The parties do not dispute that: (1) Finkel is a member of a protected class; (2) he was qualified for his position; and (3) he suffered an adverse employment action. Doc. 20 at 10; Doc. 21 at 3. The issue here is whether the facts alleged in the Amended Complaint give rise to an inference of discrimination.

Finkel asks the court to draw an inference of discrimination based on the temporal proximity between his disclosure of his religion and his termination, remarks made by supervisors and colleagues related to his religion, his status as CRA's only Jewish employee, and the allegedly pretextual reason for his termination. Doc 20 at 10. Finkel relies on the May 2025 Comments, the Weekly Meeting Comments, and the June 2025

Comments, in concert with the surrounding circumstances, to establish an inference of discrimination:

- May 2025 Comments: In response to Finkel's request to leave early on Fridays to observe the Sabbath, Allen, Finkel's supervisor, stated, "I had a Jewish person invite me to his house and they do a lot of drinking." Am. Compl. ¶ 14. Ramnarayan, Owner of CRA, then responded, "yes, I know, West Hempstead." *Id*. Finkel also requested time off to observe the Jewish holidays. *Id*.
- Weekly Meeting Comments: On repeated occasions during a weekly meeting between Finkel, Allen and other employees, Allen asked whether Finkel "did anything Jewish this weekend." *Id*. ¶ 17.
- June 2025 Comments: Allen repeatedly asked Finkel how he felt about then-mayoral candidate Zohran Mamdani. *Id*. ¶ 18.

CRA argues that the circumstances surrounding his termination, including the comments made by supervisors and colleagues, fail to give rise to an inference of discriminatory intent and that the complaint instead relies on a false syllogism and is therefore conclusory.[1] Doc. 17-1 at 12, 16. The Court finds that facts alleged in the Amended Complaint are insufficient to plausibly raise an inference of discrimination because the proffered comments were stray remarks and the circumstances surrounding his termination do not raise an inference of discrimination.

An inference of discrimination can be drawn from "actions or remarks made by decisionmakers that could be viewed as reflecting discriminatory animus." *Chertkova v. Connecticut General Life Insurance Co.*, 92 F.3d 81, 91 (2d Cir. 1996); *see also Salas v. New York City Department of Investigation*, 298 F. Supp. 3d 676, 687 (S.D.N.Y. 2018). For example, circumstances giving rise to an inference of discrimination can include "the employer's criticism of the plaintiff's performance in ethnically degrading terms," "its

[1] In his opposition memorandum, Finkel claims that CRA failed to analyze the comments at issue under the 4-factor test outlined in *Henry v. Wyeth Pharmaceuticals, Inc.*, 616 F.3d 134, 149 (2d Cir. 2010), as part of its discriminatory termination argument and thus the arguments should not be considered. Doc. 20 at 13-14. While a more fulsome analysis is contained in the hostile work environment section of the motion to dismiss, CRA also argues, in the discriminatory termination section, that the arguments fail to meet the *Henry* test. Doc. 17-1 at 13, 21–22. Accordingly, the Court will consider the argument that the comments fail to raise an inference of discrimination using the Second Circuit's test under *Henry*.

invidious comments about others in the employee's protected group," "the more favorable treatment of employees not in the protected group," or "the sequence of events leading to the plaintiff's discharge." *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015) (quoting *Leibowitz v. Cornell University*, 584 F.3d 487, 502 (2d Cir. 2009)).

"As a general matter, verbal comments may raise an inference of discrimination, but not where they lack a 'causal nexus to the termination decision.'" *Luka v. Bard Coll.*, 263 F. Supp. 3d 478, 487 (S.D.N.Y. 2017) (quoting *Williams v. Victoria's Secret*, No. 15-cv-4715 (PGG) (JLC), 2017 WL 1162908, at *8 (S.D.N.Y. Mar. 28, 2017)); *see also Tyson-Phipps v. Rubio*, 779 F. Supp. 3d 440, 456 (S.D.N.Y. 2025) (holding that discriminatory comments must be "causally connected to conduct rising to the level of an adverse employment action"). The Second Circuit has articulated a four-factor test to determine whether remarks suggest discriminatory animus or are "stray remarks," the latter of which are generally insufficient on their own to support a claim of employment discrimination. *Danzer v. Norden Systems, Inc.*, 151 F.3d 50, 56 (2d Cir. 1998); *Martin v. City Univ. of N.Y.*, No. 17-cv-6791, 2018 WL 6510805, at *9 (S.D.N.Y. Dec. 11, 2018). When determining the probative value of comments, courts look to:

> (i) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (ii) when the remark was made in relation to the employment decision at issue; (iii) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (iv) the context in which the remark was made (i.e., whether it was related to the decision-making process).

*Lenzi v. Systemax, Inc.*, 944 F.3d 97, 112 (2d Cir. 2019) (quoting *Henry v. Wyeth Pharmaceuticals, Inc.*, 616 F.3d 134, 149 (2d Cir. 2010)). "No single factor is dispositive." *Id*. Here, considering each of the four factors, the comments alleged in the Amended Complaint are stray remarks that do not suggest discriminatory animus.

The individuals who made the comments include Allen, Finkel's supervisor, and Ramnarayan, Owner of CRA. Am. Compl. ¶ 13–14, 17–18. The Amended Complaint contains no facts from which to conclude that Ramnarayan was a decision-maker as to

Finkel's termination. Allen, however, was one of only two CRA employees present at the meeting to terminate Finkel, and the complaint alleges that Allen was involved in the decision to terminate Finkel. *Id.* ¶ 13; *see also Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (permitting allegations made "on information and belief" where the information is peculiarly within the defendant's possession or the allegation is supported by factual information that makes the inference plausible). However, even if Allen made the ultimate decision to terminate Finkel, the Court's analysis does not rest on Allen's status as a decision-maker because the comments are otherwise insufficient to carry an inference of discrimination. *Danzer*, 151 F.3d at 56 (explaining that, without more, "stray remarks, even if made by a decisionmaker, do not constitute sufficient evidence to make out a case of employment discrimination").

"There is no bright-line rule for when remarks become 'too attenuated' to be significant to a determination of discriminatory intent." *Tolbert v. Smith*, 790 F.3d 427, 437 (2d Cir. 2015). Although some of the proffered comments were made within weeks of Finkel's termination, none of the proffered comments were made in relation to Finkel's work performance, either in content or context, which fails to raise an inference of discrimination. *See Henry*, 616 F.3d at 149 ("[t]he more remote and oblique the remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination").

Though the timing, particularly of some of the later comments, may weigh in Finkel's favor, the comments were all made in terms that, while insensitive have no nexus to his termination, which fails to raise an inference of discrimination, even in light of their timing just weeks before the termination. *See Tomassi*, 478 F.3d at 115 ("[t]he more a remark evinces a discriminatory state of mind, and the closer the remark's relation to the allegedly discriminatory behavior, the more probative that remark will be"); *Luka*, 263 F. Supp. 3d at 488 (finding no inference of discrimination where complaint failed to allege a causal connection between stray comments and the adverse action).

Finkel argues that the comments, considered in context, reflect prejudicial stereotypes about Jewish people and the neighborhood in which Finkel resides which is sufficient to raise an inference of discrimination. Am. Compl. ¶ 14. A remark reflecting prejudicial stereotypes of a protected group can suggest discriminatory intent, but there is no indication that Allen or Ramnarayan's alleged stereotypical views motivated any potential decision-maker to terminate Finkel as is required to meet the pleading bar. *Moukdad v. NYU Langone Health System*, No. 25-cv-2939, 2026 WL 774270 at *5–6 (S.D.N.Y. Mar. 18, 2026); *see Tomassi v. Insignia Fin. Grp., Inc.*, 478 F.3d 111, 116 (2d Cir. 2007), *abrogated in part on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009) ("[t]he relevance of discrimination-related remarks does not depend on their offensiveness, but rather on their tendency to show that the decision-maker was motivated by assumptions or attitudes relating to the protected class").

Allen and Ramnarayan's comments in May 2025, while "acknowledging a stereotype which may have negative connotations…do not raise a plausible inference that [their] actions towards the [p]laintiff were a result of the plaintiff's membership in a protected class." *De La Pena v. Metropolitan Life Ins. Co.*, 953 F. Supp. 2d 393, 413 (E.D.N.Y. 2013), *aff'd.*, 552. Fed. Appx. 98 (statement by supervisor that "Filipinos were heavy beer drinkers," even considered in light of Plaintiff's status as the only Filipino employee and other context, insufficient to establish discriminatory animus). They made no reference to his ability to succeed at his job and were not made as part of a conversation about his termination. *See Martin*, 2018 WL 6510805, at *11 ("[c]onsidering again the comments as a group, the Court observes that none was made in the context of the decision-making process"); *c.f. Nahar v. ADR Ventures WRP LLC*, No. 23-cv-3835, 2024 WL 4042433, at *5 (S.D.N.Y. Sep. 23, 2024) (comments made toward an employee wearing a hijab that "[t]he customers will be scared" and "[y]ou will drive the customers away…draw a plausible connection between [supervisor's] views about [employee's] religious practices and" the adverse employment action); *E.E.O.C. v. Town*

*of Huntington*, No. 05-cv-4559, 2008 WL 361136, at *8 (E.D.N.Y. Feb. 8, 2008) (quoting *Back v. Hastings on Hudson Union Free School Dist.*, 365 F.3d 107, 124 n.12 (2d Cir. 2004) (finding comments that "dr[a]w a direct link [sic] between…stereotypes and the conclusion that [employee] should not [hold their position]" sufficient to establish discriminatory animus). The May 2025 Comments were only connected to Finkel's work insofar as they occurred when Finkel asked to leave work early on Fridays in the winter to observe the Sabbath, which there is no direct evidence that CRA took issue with. *Crowley v. Billboard Magazine*, 576 F. Supp. 3d 132, 145–46 (S.D.N.Y. Dec. 21. 2021) (finding a stereotyped remark by a decision-maker temporally remote and outside of the context of a discussion regarding employment a stray remark insufficient to evidence discriminatory animus).

The May 2025 Comments do not stand alone, of course, and subsequent comments, even those that "may not be viewed as offensive," can suggest the adverse action was motivated by discrimination when considered alongside other comments. *Town of Huntington*, 2008 WL 361136, at *9 ("subsequent comments which although not as explicit…may be interpreted to reveal a similarly discriminatory sentiment"). However, Allen's later comments inquiring about Finkel's weekend plans acknowledged his Jewish faith, but neither the questions standing alone nor when considered in context provides a basis for the court to conclude Allen, or any other potential decision-maker, held discriminatory animus that played a role in his termination. *See Paupaw-Myrie v. Mt. Vernon City Sch. Dist.*, 653 F. Supp. 3d 80, 98 (S.D.N.Y. 2023) ("Statements that merely acknowledge Plaintiff's membership in a protected class do not support an inference of discrimination."); *Obah v. Bronxworks*, No. 25-cv-1550, 2026 WL 2098155, at *4 (S.D.N.Y. June 21, 2026) ("Title VII does not bar all discussion of religion and/or national origin in an employment setting") (quoting *Pasic v. Eztzi's Tex. Holding Corp.*, No. 01-cv-1114, 2002 WL 31938854 at *3 (S.D.N.Y. Jan. 9, 2002)); *cf. Shkoza v. NYC Health and Hosps. Corp.*, No. 20-cv-3646, 2021 WL 4340787, at *4 (S.D.N.Y. Sept. 22,

2021) ("Facially neutral questions about a person's place of origin or citizenship status—particularly questions that may naturally arise when a new employee is hired—are not probative of a discriminatory animus absent any other indicia of discrimination."). While it is understandable to be uncomfortable when asked questions about one's religious beliefs or political opinions in the workplace, a plaintiff's "feelings and perceptions of being discriminated against are not evidence of discrimination." *Bickerstaff v. Vassar College*, 196 F.3d 435, 456 (2d Cir. 1999) (citation modified). In sum, though the timing of the comments and Allen's status as a decision-maker may weigh in Finkel's favor, the comments made by Allen and Ramnarayan do not have a "tendency to show that the decision-maker was motivated by assumptions or attitudes relating to the protected class." *Tomassi*, 478 F.3d at 116.

The court's analysis does not end with the stray comments in isolation. *Id*. (comments should not be "categorized either as stray or not stray and then disregarded if they fall into the stray category"). Stray comments can "bear a more ominous significance" when considered in light of other indicia of discrimination, and Finkel urges that the context surrounding the proffered comments is indicative of discriminatory intent, citing his request for time off, the allegedly pretextual rationale for his termination, and his status as the only Jewish employee. *Danzer*, 151 F.3d at 56; Doc. 20 at 10, 13. The Court finds that the Amended Complaint fails to provide facts about the circumstances that would indicate discriminatory intent or behavior.

Finkel argues that the temporal proximity between his request for religious leave and his termination suggests that he was fired because of his request. Doc. 20 at 13. "[T]emporal proximity' between the time an employer learns of an individual's inclusion in a protected class and termination 'is often an important consideration.'" *Pagan v. Rsch. Found. Of the City Univ. of New York*, No. 24-cv-6500, 2025 WL 2793685, at *5 (S.D.N.Y. Sep. 30, 2025) (quoting *Farmer v. Shake Shack Enter., LLC*, 473 F. Supp. 3d 309, 326 (S.D.N.Y. 2020). However, "where a plaintiff relies on temporal proximity

alone, the protected activity and adverse action must occur 'very close' together." *Sealy v. State Univ. of New York at Stony Brook*, 834 F. App'x 611, 614 (2d Cir. 2020) (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)). Finkel does not rely on temporal proximity alone, however, and alleges that the temporal proximity is part of a "sequence of events" leading up to his termination that give rise to an inference of discrimination. *Littlejohn*, 795 F.3d at 312 (2d Cir. 2015). Here, Finkel alerted his supervisor to his need for religious leave "at the beginning of his employment" in early May and was terminated on July 30. Am. Compl. ¶ 11, 14, 15, 19. Standing alone, nearly three months does not satisfy the "very close" standard to establish causation. *Stoddard v. Eastman Kodak Co.*, 309 Fed. App'x 475, 480 (2d Cir. 2009) (summary order). However, even when considered in light of the sequence of events, the temporal proximity is insufficient to find discrimination. While comments' temporal proximity and other evidence can push stray comments to "bear a more ominous significance," the Amended Complaint fails to include facts that would push the allegations from "conceivable" to "plausible." *Danzer*, 151 F.3d at 56; *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015) (quoting *Twombly*, 550 U.S. at 570); *c.f. Kuperman v. City of New York*, No. 20-cv-6834, 2021 WL 4442855, at *6 (S.D.N.Y. Sep. 28, 2021) (finding facially neutral question about religion made during a tenure meeting three months before termination indicative of discriminatory animus when considered alongside supervisor's reticence to approve religious leave and failure to address allegations of abuse levied at plaintiff by students); *Kinowski v. Home for Elderly Women of Montgomery County, Inc.*, No. 22-cv-1342, 2023 WL 4865531, at *7 (N.D.N.Y. July 31, 2023) (finding allegations plausible where supervisor's behavior changed following disclosure of religion, pretextual investigation was initiated to solicit complaints about employee, and timing of termination coincided with Second Circuit decision in *We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266 (2d Cir. 2023) .

The Amended Complaint additionally does not include facts that permit the Court to draw a conclusion that, as Finkel alleges, his termination was pretextual. However, Finkel argues that the Court should draw an inference of discrimination because the stated reason for his termination does not comport with his performance, which he alleges was not deficient, and that any alleged deficiency was a result of CRA's failure to provide him with the resources he needed to generate sales. Am. Compl. ¶ 20. "A plaintiff can support his theory of discriminatory discharge 'by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action." *Pappas v. XP Controle Participações S.A.*, No. 19-cv-11137, 2023 WL 317353, at *7 (S.D.N.Y. Jan. 18, 2023) (quoting *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 430 (2d Cir. 2016)).

Although a plaintiff need not allege facts to anticipate a defendant's legitimate, nondiscriminatory reason for termination, here, Finkel's Amended Complaint identifies a non-discriminatory basis for his termination—"unsatisfactory results during his first 90-day probationary period." Am. Compl. ¶ 20. "A plaintiff is not required at the pleading stage to anticipate what nondiscriminatory reasons the defendant might proffer and to rebut those reasons in the complaint." *Yang v. Department of Education*, No. 14-cv-7037, 2016 WL 4028131, at *9 (E.D.N.Y. July 26, 2016). However, "[t]he fact that [p]laintiff identifies a non-discriminatory basis for his termination undermines any potential inference that he was terminated based on his race, national origin, or religion." *Ahmad v. White Plains City School District*, No. 18-cv-3416, 2019 WL 3202747, at *6 (S.D.N.Y. July 16, 2019); *Hussey v. v. N.Y.S. Dep't of Law/Office of Att'y Gen.*, 933 F. Supp. 2d 399, 407 (E.D.N.Y. 2013) ("By offering her own alternative, nondiscriminatory explanations for the decision not to promote her, plaintiff wholly undermines the plausibility of her discrimination claim.").

Finkel alleges that he did not suffer from any performance issues. Am. Compl. ¶ 20. However, this allegation is conclusory and not supported by any facts about his

performance. *Napier v. Town of Hempstead*, No. 97-9071, 1998 WL 385869, at *1 (2d Cir. Apr. 22, 1998) ("As for his work performance, Napier has provided nothing more than a bare allegation that his work was satisfactory. This bare allegation, however, is insufficient to support a finding of satisfactory job performance."); *see May v. Whole Foods Markets, Inc.*, No. 19-cv-1690, 2023 WL 2393759, at *6 (W.D.N.Y. Feb. 2, 2023) ("[i]t is well settled that the mere fact that an employee disagrees with an employer's evaluation of that employee's misconduct or deficient performance, or even has evidence that the decision was objectively incorrect, does not necessarily demonstrate, by itself, that the employer's proffered reasons are a pretext for termination.").

Additionally, Finkel alleges that any purported performance-related issues were caused by CRA's failure to provide him certain materials, which, in turn, rendered it "impossible for [him] to generate sales during his three-month employment." Am. Compl. ¶ 20. Finkel fails to allege that he was denied resources because of his religious beliefs, leading to poor performance cited in his Termination Email. Finkel does not identify a comparator to show that others were provided resources to help them succeed at work. *See Paupaw-Myrie*, 653 F. Supp. 3d at 100 (finding allegations of attendance checks insufficient to carry a Title VII claim where no evidence was provided to show whether other employees' attendance was similarly scrutinized). Nor does Finkel show that he received any positive performance reviews or that his working conditions changed following the disclosure of his religion. *C.f. Yang*, 2016 WL 4028131, at *10 (finding inference of discrimination where complaint alleged negative performance reviews written by supervisor who made discriminatory comments were laden with false information and conflicted with prior positive reviews); *Pappas*, 2023 WL 317353, at *7 (finding inconsistencies in defendant's stated reason for termination sufficient, at the pleading stage, to find inference of discrimination). Without more, the Court cannot conclude that Finkel's termination gives rise to an inference of discrimination.

Nor can Finkel rely on his status as the only Jewish employee, without more, to draw an inference of discrimination. This is precisely the type of conclusory allegation that does not satisfy the "minimal burden to show discriminatory intent." *Littlejohn*, 795 F.3d at 311; *see also Anderson v. Hertz Corp.*, 507 F. Supp. 2d 320, 329 (S.D.N.Y. 2007) (fact that plaintiff was the only African-American at his worksite did not "supply evidence sufficient . . . to establish a prima facie case of discrimination"), *aff'd*, 303 Fed. App'x 946 (2d Cir. 2008); *Pattanayak v. Mastercard, Inc.*, No. 22-cv-1411, 2023 WL 2358826, at *2 (2d Cir. Mar. 6, 2023) (summary order) ("[T]he fact that [the plaintiff] was the only employee of a protected class in a department does not, standing alone, give rise to an inference of discriminatory motive.").

The circumstances outlined in the Amended Complaint fail on their own to establish discriminatory intent, and when considered alongside the comments, fail to show that the remarks were "part of a sequence of events culminating in" the adverse employment action. *Danzer*, 151 F.3d at 55–56. Even viewed in the light most favorable to Finkel, the facts alleged are insufficient to draw an inference that he was terminated for discriminatory reasons. Therefore, Finkel's claim under Title VII is dismissed.

**B. The Court Declines to Exercise Supplemental Jurisdiction over Finkel's NYSHRL and NYCHRL Claims**

Finkel rests subject matter jurisdiction on his Title VII claim under 28 U.S.C. §§ 1331 and 1343 and asks the court to exercise supplemental jurisdiction over his state law claims pursuant to 28 U.S.C. § 1367. Am. Compl. ¶ 5. Federal district courts may exercise supplemental jurisdiction over state law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a); *see also Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 27 (2025) (stating that, under § 1367(a), as under *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966), supplemental jurisdiction applies to state-law claims that arise "from the same facts" as a federal-law

claim over which a court has original jurisdiction). Supplemental jurisdiction represents "a doctrine of discretion, not of plaintiff's right." *Kolari v. New York-Presbyterian Hospital*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). Section 1367(c) lists circumstances in which a district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a)." 28 U.S.C. § 1367(c). One such circumstance is where "the district court has dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c)(3).

Having dismissed Finkel's federal claim under Rule 12(b)(6), the Court declines to adjudicate the state and local law claims. *See Royal Canin*, 604 U.S. at 32 (explaining that where the federal anchor claims have been dismissed and only supplemental jurisdiction over state-law claims remains, the district court "may (and indeed, ordinarily should) kick the case to state court" because, in such a context, "federal law is not where the real action is"); *see also Gibbs*, 383 U.S. at 726 (noting that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law" and further stating that "if the federal claims are dismissed before trial . . . the state claims should be dismissed as well"). Accordingly, Finkel's claims under New York State and New York City law are dismissed without prejudice.

## IV. CONCLUSION

For the reasons set forth above, CRA's motion to dismiss is GRANTED. Finkel has not requested leave to amend his complaint. To the extent he wishes to do so, Finkel

may move to file a Second Amended Complaint by December 4, 2026. If he fails to do so by December 4, the case will be closed.

The Clerk of the Court is respectfully directed to terminate the motion, Doc. 17.

It is SO ORDERED.

Dated: November 16, 2026
New York, New York

EDGARDO RAMOS, U.S.D.J.